KENNETH MONROE PRESLEY, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Presley v. Commissioner
Docket No. 21062-80.
United States Tax Court
T.C. Memo 1982-434; 1982 Tax Ct. Memo LEXIS 319; 44 T.C.M. (CCH) 633; T.C.M. (RIA) 82434; July 28, 1982. John T. Campbell and Richard Dugan, [1] for the petitioner. Jillena A. Warner, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1978 in the amount of $698. The only issue for decision is whether petitioner is entitled to deduct for the year here in issue the cost of driving his automobile each day between his home in Boaz, Alabama, and the Bellefonte Nuclear Power Plant in Hollywood, Alabama, where he was employed as an employee business expense. FINDINGS OF FACT Some *320 of the facts have been stipulated and are found accordingly. Petitioner resided in Boaz, Alabama, at the time of the filing of his petition in this case. For the calendar year 1978, petitioner filed an individual income tax return with the Internal Revenue Service Center at Chamblee, Georgia. Petitioner, on this return, showed a filing status of single and claimed one personal exemption. On January 23, 1978, petitioner was employed by the Tennessee Valley Authority (TVA) as a steamfitter-plumber helper. Petitioner was employed under a program set up between the TVA and the steamfitters union whereby the TVA agreed to employ individuals recommended by the union in a training program and furnish the on-the-job training for these individuals. The union agreed to hold classes for the individuals and the individuals were to furnish their own books, although the TVA permitted them to buy books at a discount price available to the TVA. The TVA agreed to enter into this program for training steamfitters because of the need for steamfitters at not only the Bellefonte plant of TVA but at other plants. Under the program the first 6 months of a trainee's employment was a probationary *321 period and, if he proved satisfactory during that period, he had 4 years of further training before he became a journeyman steamfitter-plumber. The union made the selection of trainees and it was the union that insisted on the probationary period. The understanding was that if during this probationary period the individual placed in the training program was unsatisfactory from either the standpoint of TVA or the union, he would not proceed with further training. During the entire time the program was in effect at the TVA plant, no person taken into the training program was let go during the probationary period because of not proving satisfactory. The method of selection of trainees by the union was such that the likelihood of a trainee being let go during his probationary period was small. Under its agreement with the union, TVA agreed to provide work for trainees for the entire 4-1/2 year period required for completion of the training for the individual to become a journeyman steamfitter-plumber. Therefore, anyone taken into the training program was assured that if they proved satisfactory during their probationary period of employment with TVA, they would be employed at least *322 the 4-1/2 years required for the training period. It was the intent of TVA in running the training program to employ the persons who completed that program as steamfitter-plumbers at one of its plants upon the individual becoming a journeyman steamfitter-plumber. The Bellefonte plant at Hollywood, Alabama, as well as other TVA plants in the area, experienced a constant shortage of steamfitter-plumbers because of the lack of individuals in that trade in the area in which the Bellefonte Plant and certain other TVA projects were located. When petitioner was initially employed by TVA, the customary 11-month/29-day period of employment used by TVA in its agreements with all hourly workers was stated in his contract. TVA viewed all hourly workers in any of the trades as temporary employees and had the provision of a period of 11 months and 29 days put into its contract with persons employed in the various trades because of the view of personnel at TVA that this would facilitate reduction in manpower if TVA was directed to have a reduction in force. While this provision was in effect, persons employed as hourly workers in various trades at TVA would be terminated for a period of 2 weeks *323 at the end of the 11-month and 29-day period and then re-employed. Approximately 90 percent of journeymen steamfitter-plumbers were re-employed after the 11-month/29-day period while the 11-month/29-day provision was in the TVA contracts. In the case of a trainee, it was understood between TVA and the union that the individual at the end of 11 months and 29 days would have a 2-week vacation and return to the same TVA project to complete his training program. It was understood that the individual would remain with TVA for the 4-1/2 years necessary to complete this program. In October 1978, before the end of the 11-month/29-day period initially stated in petitioner's agreement, TVA ceased using the 11-month/29-day provision in its contracts and, in fact, petitioner never was terminated from his work at TVA and was still employed there in November 1981 at the time of the trial of this case. When petitioner was employed on January 23, 1978, by TVA, his job title was Steamfitter-Plumber Helper Probationary and his pay rate was $5.76 an hour. By a personnel action dated July 12, 1978, petitioner's job title was changed to Steamfitter-Plumber Helper 1 at an hourly pay rate of $5.91, *324 with an effective date of July 28, 1978. As of January 12, 1979, petitioner's job title was changed to Steamfitter-Plumber Helper 2 with an hourly pay rate of $7.045. The general agreement between the TVA and the Tennessee Valley Trades and Labor Council contained the following statements with respect to appointment to construction trade and labor positions: 1. All persons appointed to trades and labor positions on construction work are temporary employees. Temporary trades and labor employees are compensated at hourly rates. 2. All positions compensated at hourly rates are intermittent to the extent that work in these positions is subject to interruption because of weather conditions, lack of materials, equipment, or designs, or temporary lack of work due to other causes. When petitioner began his training at TVA, he was aware that it required approximately 4 years' training to become a journeyman steamfitter-plumber. At the time he began working at the Bellefonte Nuclear Power Plant, he did not know how long his job there would last. Petitioner became a member of Union Local 498 on August 18, 1978. This was the local from which petitioner had been sent to TVA as a *325 steamfitter-plumber helper in the training program and, from time-to-time after he became a member of the union, petitioner had discussions with the agent of this local union. The distance between petitioner's residence in Boaz, Alabama, and the Bellefonte Nuclear Power Plant where he worked in 1978 and subsequent years is 52 miles one way. Petitioner drove from his home in Boaz to his work at the Bellefonte Nuclear Power Plant each day and returned to his home in Boaz after the conclusion of his work. On his 1978 Federal income tax return, petitioner claimed an employee business expense deduction of $3,050 for his automobile travel between his residence in Boaz and the Bellefonte plant. This deduction was explained as "22,995 mi. at 17 & 15" per mile." As a further explanation on the Form 2106 attached to his return, petitioner showed as his occupation, in which the expenses were incurred, as "Temporary Assignments," the employer's name as T.V.A., and the employer's address as the Bellefonte plant, Hollywood, Alabama. Respondent in his notice of deficiency disallowed the $3,050 deduction claimed by petitioner with the following explanation: (a) The amount of $3,050.00 claimed *326 on your return as employee business expense is disallowed because it has not been established that any amount was for an ordinary and necessary business expense, or was expended for the purpose designated. Therefore, your taxable income is increased $3,050.00. OPINION Section 162(a)(2) [2] provides for a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, including traveling expenses while away from home in pursuit of a trade or business. [3]
*327 We have held consistently that in determining whether a taxpayer is away from home in pursuit of a trade or business within the meaning of section 162(a), his principal place of employment is to be considered his home. . However, where a taxpayer's employment at a location is temporary as distinguished from indefinite or indeterminate, he has been considered to be away from home at the location where he is employed. ; ; Whether a taxpayer's employment is temporary or indefinite depends on whether it can be expected to last for only a relatively short period of time. ; . The numerous cases involving whether a taxpayer's employment is temporary or indefinite all turn on their particular facts. The determination depends on the length of time a taxpayer might reasonably expect the employment at the particular location *328 to last and all other relevant facts. In the present case, it is clear that petitioner could expect to be at the Bellefonte plant for 4-1/2 years from the time his employment began in January 1978 since he was in the training program. The record also shows that the likelihood was that a job would be available to petitioner at the Bellefonte plant after he completed the training program. The contract under which petitioner was employed had an 11-month/29-day clause in it, but it was understood by both TVA and petitiner that at the end of this period petitioner would merely take a 2-week vacation and return to his training program. Petitioner, on brief, does not argue that his work was temporary because of the 11-month/29-day provision. The evidence in this case is so clear that petitioner's employment would be continued for the 4-1/2 years necessary for petitioner to complete his training as a steamfitter-plumber and become a journeyman steamfitter-plumber that no basis exists for a contention that the 11-month/29-day contract provision had any relevance to the period of time during which petitioner would be employed. Petitioner's argument is that since the first 6 months of *329 his employment at the Bellefonte plant were probationary, he should be considered to be a temporary employee until the probationary period had expired. However, the evidence shows that the union carefully selected trainees for the TVA training program and the likelihood was that petitioner would remain in the training program after the probationary period had transpired. The evidence is clear probationary period had transpired. The evidence is clear that only if petitioner proved unsatisfactory as a trainee would he be discontinued during his probationary period. Any employee may be discontinued if his work is not satisfactory. This fact does not cause his job to be temporary. The question is whether the job itself is temporary or indefinite. In the instant case, the record is clear that petitioner's job at the Bellefonte plant was indefinite. Petitioner himself even testified he did not know how long the job at the Bellefonte plant would last. Petitioner relies on , for the proposition that the length of a taxpayer's actual employment is not determinative of whether his job is temporary but that the determinative *330 factor is his prospect of continued employment. Even if the criteria set forth in the Frederick case is accepted, petitioner would not be helped. [4] Petitioner knew at the time of his employment by TVA that his job there would last for at least 4-1/2 years and probably for some time thereafter. Based on the facts in this record, we conclude that petitioner has failed to establish that his employment at the Bellefonte Nuclear Power Plant in 1978 was temporary rather than indefinite. Decision will be entered for the respondent.
Footnotes
1. An attorney specially recognized to appear for this case only.↩
2. Uless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue. ↩
3. The facts here show that petitioner's home in Boaz, Alabama, was 52 miles from his work at the Bellefonte Nuclear Power Plant and that petitioner drove from his home to his work each day. This fact is a strong indication that the cost to petitioner of driving back and forth was merely commuting expenses. Commuting expenses have been consistently held to be personal nondeductible expenses. See , and cases there cited. It would seem that because of the nature of the expenses here involved, the cost of the travel would be nondeductible whether petitioner's position at the Bellefonte Nuclear Power Plant was temporary or indefinite. However, respondent at the trial specifically stated that he conceded that the $3,050 claimed by petitioner for travel expenses was properly deductible if we concluded that petitioner's employment at the Bellefonte plant during 1978 was temporary. In fairness to petitioner, we will decide the issue of whether his work at the Bellefonte Nuclear Power Plant was temporary even though the case might be disposed of on the basis that petitioner's deduction was for commuting expenses. .↩
4. It is to be noted that other circuit courts have not used in their entirety the criteria stated in , for determining whether employment is temporary. See .↩